UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JENNIFER P. MILLER,                    )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )        No. 2:20-CV-013-DCP
                                        )
KILOLO KIJAKAZI[1],                     )
Acting Commissioner of Social Security, )
                                        )
            Defendant.                  )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 21]. Now before the Court are

Plaintiff's Motion for Judgment on the Pleadings [Doc. 22] and Defendant's Motion for Summary

Judgment [Doc. 26]. Jennifer Miller ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion

and **DENY** the Commissioner's motion.

## I.      PROCEDURAL HISTORY

On August 16, 2016, Plaintiff protectively filed an application for disability insurance

benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., claiming a period

of disability that began on August 3, 2015. [Tr. 15, 180–81]. After her application was denied

initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 101–02]. A

video hearing was held on October 16, 2018. [Tr. 32–59]. On January 15, 2019, the ALJ found

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

that Plaintiff was not disabled. [Tr. 15–26]. The Appeals Council denied Plaintiff's request for review on January 8, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on January 22, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since August 3, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: osteoarthritis, fibromyalgia, obesity, lumbar spondylosis, and scoliosis (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps, stoop, kneel, crouch, and crawl. The claimant is limited to frequent balancing.
>
> 6. The claimant is capable of performing past relevant work as a Health Service Coordinator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 3, 2015, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 17–25].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial

3

evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

4

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff asserts that the ALJ's disability determination is not supported by substantial

evidence because the ALJ failed to properly evaluate the combination of her impairments, including her carpal tunnel syndrome and vision impairments, as well as failed to properly weigh the opinion evidence by accepting the opinions of the nonexamining state agency consultants who did not review a complete medical record. Lastly, Plaintiff claims that the ALJ failed to properly evaluate her symptoms pursuant to Social Security Ruling 16-3p.

### A. Waived Argument

First, Plaintiff claims that the ALJ's "decision did not in any meaningful way follow the order of remand in the prior civil action, but the [ALJ] in effect simply restated his earlier decision, and such was error." [Doc. 23 at 13]. However, Plaintiff does not specifically argue or provide any background on the alleged remand order, and the Court's review does not uncover a remand order in the transcript. Ultimately, Plaintiff's counsel fails to provide support or any analysis for this allegation of error. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

"When a party fails to cite to specifics in the record, the court is under no obligation 'to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence.'" *Gilbert v. Colvin*, No. CIV.A. 12-257-KSF, 2013 WL 2325133, at *3 (E.D. Ky. May 28, 2013) (quoting *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)).

Therefore, the Court finds Plaintiff's claim regarding an alleged prior order of remand is undeveloped and ultimately waived. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543

6

(6th Cir. 2014) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)); *see also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (in a Social Security appeal, noting that a claimant's observations with respect to the ALJ's findings "without elaboration or legal argument, failing even to hint at their legal significance or virtue," are generally waived).

### B. Plaintiff's Vision Impairments and Carpal Tunnel Syndrome

Plaintiff claims that the ALJ "erroneously found that [her] carpal tunnel syndrome was non-severe" despite having "surgery on one hand and the possibility of surgery on the other." [Doc. 23 at 14]. Additionally, Plaintiff asserts that the ALJ failed to "make any meaningful mention" or analysis of her vision impairments. [*Id.*].

The Commissioner responds that Plaintiff failed to list any problems with her vision as a physical impairment that limited her ability to work in her filed Disability Report [Tr. 194]. Moreover, the Commissioner asserts that although Plaintiff experienced issues with her eyes, "they were resolved with the appropriate procedures, including cataract surgery and YAG Laser Capsulotomy," and therefore any visual impairments could not last for a continuous period of more than twelve months. [Doc. 27 at 15]. Additionally, the Commissioner asserts that "Plaintiff's activities of daily living were inconsistent with her complaints of vision impairments." [Doc. 27 at 15].

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. §§ 404.1508; 416.920(a)(4)(ii); 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical,

7

physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508; 416.908. Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a de minimis hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).

Further, it is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ

8

characterized any other alleged impairment as severe or not severe is of little consequence.").

During Step Two, the ALJ specifically considered Plaintiff's carpal tunnel syndrome and found it was not a severe impairment because "there is no indication from the record that [it] significantly limits the claimant's ability to perform basic work activities and do[es] not meet the time requirement." [Tr. 18]. However, in the RFC determination, the ALJ considered Plaintiff's carpal tunnel syndrome by noting that Plaintiff complained of carpal tunnel syndrome and difficulties reaching and using her hands [Tr. 21], as well as that Dr. Blaine noted that Plaintiff reported carpal tunnel syndrome [Tr. 22]. Further, in finding that Dr. Blaine's opinion was inconsistent with his own examination findings, the ALJ distinguished that Plaintiff's grip strength was 5/5 bilaterally, her flexor and extensor strength of both upper and lower extremities was 5/5, and that her digital manipulation appeared normal in both hands. [Tr. 24]. Therefore, with respect to Plaintiff's carpal tunnel syndrome, any failure by the ALJ to identify it as a severe impairment was harmless because the ALJ proceeded to consider its effects as a nonsevere impairment during the RFC determination.

Next, Plaintiff contends that the ALJ erred by failing to properly consider or analyze in any way her vision impairments. On November 8, 2016, John C. Johnson, M.D. conducted a diabetic eye examination where Plaintiff reported dryness and watering of her right eye (OD). [Tr. 458]. Plaintiff's past ocular history is listed as ambleopia, LASIK in 1999, and nuclear sclerosis on her left eye with a date unreported. [*Id.*]. Additionally, Plaintiff's ocular procedures include "Phaco w/ PCIOL" on her left eye performed by Dr. Johnson on February 17, 2011. [*Id.*]. Dr. Johnson's treatment notes reflect that he discussed the ocular and systemic benefits of blood sugar control in connection with Plaintiff's Type 2 diabetes. [Tr. 462]. Dr. Johnson also stated that Plaintiff had acute bacterial conjunctivitis of her right eye, a history of retinal detachment, and pseudophakia of

9

both eyes. [*Id.*].

On May 1, 2017, Plaintiff reported decreased vision in her left eye, as her vision had been cloudy and foggy. [Tr. 453]. Dr. Johnson assessed after-cataract obscured vision in the left eye and conducted YAG Laser Capsulotomy on May 11, 2017. [Tr. 452, 456]. On May 12, 2017, Dr. Johnson assessed that Plaintiff no longer experienced obscured vision in her left eye. [Tr. 451]. Next, on April 27, 2018, Plaintiff presented for an evaluation of decreased vision in her right eye for the past week in both distance and reading. [Tr. 440]. Dr. Johnson continued to assess Plaintiff's Type 2 diabetes without complication and pseudophakia of both eyes, as well as epiretinal membrane of her right eye. [Tr. 444–45]. Dr. Johnson referred Plaintiff for additional evaluation of her epiretinal membrane of the right eye. [Tr. 445]. Lastly, on July 18, 2018, treatment records from Plaintiff's primary care provider, Brian Way, D.O., note visual changes including a diagnosis of a macular pucker in the right eye that has caused some blurring of vision. [Tr. 508].

The Commissioner argues that the medical record shows that Plaintiff's vision impairments were resolved after the appropriate procedures. Accordingly, the Commissioner claims that any difficulties with Plaintiff's eyes could not be expected to last for a continuous period of not less than twelve months. [Doc. 27 at 15]. Additionally, the Commissioner states that Plaintiff failed to list her vision as a physical impairment that limited her ability to work in her Disability Report on August 16, 2016. [Tr. 194].

While the Commissioner also claims that Plaintiff's visual impairments were inconsistent with Plaintiff's reported daily activities, the ALJ did not make this finding. Ultimately, the ALJ did not discuss Plaintiff's vision impairments at all. Further, Plaintiff's counsel listed problems related to Plaintiff's vision during his initial statement at the disability hearing. [Tr. 36]. Plaintiff

10

testified that she was scheduled for an MRI of her brain because she often had double vision, which affected her driving. [Tr. 48]. Upon questioning, Plaintiff stated that it was on both eyes, and the blurred vision is "fleeting," because if she closes one of her eyes it would go away. [Tr. 49]. Plaintiff stated that this occurs frequently off and on all day, which affects her ability to read and use a computer. [*Id.*].

Ultimately, the Court finds that the ALJ committed reversible error by failing to properly consider Plaintiff's vision impairments in the RFC determination. As detailed above, the ALJ did not address Plaintiff's visual impairments at all at step two. Further, the ALJ failed to mention her vision impairments at any point during the RFC determination. The Court cannot find that the record does not support any functional limitations caused by Plaintiff's vision impairments, particularly in light of the lack of analysis conducted by the ALJ. *Cf. Soto v. Comm'r of Soc. Sec.*, No. 17-10054, 2018 WL 2181098, at *8 (E.D. Mich. Mar. 2, 2018) (finding "the record does not support any functional limitations caused by ADHD, depression, or personality disorder," and thus "any error in failing to consider those conditions is harmless"), *report and recommendation adopted by* 2018 WL 1466087 (E.D. Mich. Mar. 26, 2018).

Plaintiff has identified a functional limitation—decreased and blurred vision beginning in 2018—and the objective medical evidence includes a July 18, 2018 diagnosis of a macular pucker in the right eye, which has caused blurred vision. [Tr. 508]. While the May 11, 2017 YAG Laser Capsulotomy appears to have corrected Plaintiff's obscured vision in her left eye, Plaintiff's testimony and supporting treatment notes detail subsequent decreased and blurred vision in her right eye. Plaintiff also testified that her vision impairments resulted in an upcoming MRI to assess her double vision. Accordingly, the ALJ erred by failing to find Plaintiff's vision problems a severe impairment at step two, as they constitute more than the required de minimis hurdle. *See*

11

*Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988); *Verile v. Comm'r of Soc. Sec.*, No. 1:18-CV-730, 2019 WL 4727470, at *5 (W.D. Mich. Sept. 27, 2019) (finding "a history of cataract surgery, problems with an artificial lens (blurry vision, double vision), failing a DMV vision test, and an optometrist's decision to refer plaintiff to a surgeon" was sufficient evidence to find the plaintiff's vision problems was a severe impairment). Further, the failure by the ALJ to discuss Plaintiff's vision impairments was not harmless because she did not consider these impairments in the RFC determination. *See, e.g.*, *Brown v. Comm'r of Soc. Sec.*, No. 1:06-CV-814, 2008 WL 828854, at *8 (W.D. Mich. Mar. 26, 2008) ("Here, the ALJ has failed to discuss plaintiff's exotropia, a visual condition that was of sufficient severity to require corrective surgery. The record suggests that the surgery may not have resolved the condition. Because the ALJ failed to address the issue, the court is faced with cryptic medical records which appear to show reports of decreased visual acuity and double vision prior to the surgery . . . To resolve this issue on the present record would require the court to weigh the evidence of exotropia and make credibility determinations with respect to plaintiff's alleged visual impairment. These actions fall outside of the scope of the court's review of the ALJ's decision under § 405(g)."). Lastly, the ALJ did not review an opinion that assessed the presence of any functional limitations stemming from Plaintiff's recent vision problems. *Cf. McLean v. Berryhill*, No. 3:14-01332, 2017 WL 2693542, at *10 (M.D. Tenn. June 21, 2017) ("The court is persuaded that such an omission is harmless, however, because the ALJ's opinion clearly reflects that she relied on Dr. Johnson's April 27, 2011 opinion that the Plaintiff had no limitations with regard to vision.").

Therefore, the Court finds that Plaintiff's case will be remanded for the ALJ to appropriately consider Plaintiff's vision impairments both at step two and in the RFC determination. *See Hodson v. Comm'r of Soc. Sec.*, No. 1:18-CV-73, 2019 WL 1375343, at *6

12

(W.D. Mich. Mar. 27, 2019) ("Here, the Court cannot trace the ALJ's reasoning with respect to the extent of plaintiff's vision impairments. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) with respect to this issue.").  On remand, the ALJ should provide a more complete discussion of Plaintiff's alleged vision impairments.

### C.    ALJ's Treatment of Medical Opinions

Plaintiff asserts that the ALJ failed to "properly weigh the opinion evidence of Dr. David Hamilos, a podiatrist . . . pursuant to the treating physician rule."  [Doc. 23 at 13].  Plaintiff claims that Dr. Hamilos is an acceptable medical source for treatment of her diabetic foot impairments, and that the ALJ improperly found that Dr. Hamilos' opinion was inconsistent with the overall medical evidence of record.  Plaintiff also notes that the ALJ assigned little weight to the opinion of consultative examiner, Robert Blaine, M.D.  Ultimately, Plaintiff's main challenge to the ALJ's treatment of the applicable medical opinions in this case is her assertion that the ALJ improperly assigned great weight to the opinions of the nonexamining state agency physicians, which allegedly do not account for several medical issues occurring after their opinions.  The Commissioner responds [Doc. 27 at 13–15] that the ALJ appropriately evaluated the evidence of record as a whole, including the opinions of Dr. Hamilos and the nonexamining state agency consultants.

### 1.    Medical Opinions

Plaintiff was examined by Dr. Hamilos—a podiatrist—on September 12, 2016, upon complaints of difficulty walking and Type 2 diabetes mellitus with diabetic polyneuropathy.  [Tr. 409].[2]  Additionally, Dr. Hamilos' treatment notes reflect that Plaintiff needed an evaluation for

---

[2] Dr. Hamilos ultimately diagnosed Plaintiff with difficulty walking and Type 2 diabetes with diabetic polyneuropathy.  [*Id.*].

13

her disability application. [*Id.*]. On examination, Dr. Hamilos noted that Plaintiff had cool skin to both feet; her arterial pulses were 1+ (barely palpable), bilaterally, posterior tibial, dorsalis pedis; that her capillary refill including all ten digits was within normal limits, while edema was not present; that Plaintiff's dermatome sensation was diminished to pain and pressure sensation, as well as that both of Plaintiff's lower extremities had normal reflexes; and that bilaterally, Plaintiff's arches are flat, with rearfoot valgus bilateral. [Tr. 410].

Dr. Hamilos also completed a Medical Source Statement, where he opined that Plaintiff could sit for three hours at a time for a total of three hours, stand for one hour, and walk for twenty-five feet in an eight-hour workday. [Tr. 414]. Dr. Hamilos stated that Plaintiff became stiff after sitting for more than three hours and had to lean to keep her balance. [*Id.*]. Additionally, Dr. Hamilos indicated that Plaintiff did not require the use of a cane to ambulate and could occasionally operate foot controls with either foot—including that she would be able to use foot pedals to drive for thirty minutes. [Tr. 414–15]. Dr. Hamilos opined that Plaintiff could occasionally climb stairs and ramps, as well as stoop, but that she could never climb ladders or scaffolds, balance, kneel, crouch, or crawl. [Tr. 416]. Lastly, Dr. Hamilos found that Plaintiff could perform activities like shopping; travel without a companion for assistance; ambulate without using a wheelchair, walker, or 2 crutches; use public transportation; prepare a simple meal and feed herself; care for personal hygiene; and sort, handle, and use paper or files. [Tr. 418]. However, Dr. Hamilos assessed that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces or climb a few steps at a reasonable pace with the use of a single handrail. [*Id.*].

Plaintiff was also consultatively examined by Dr. Blaine on November 30, 2016. [Tr. 428–31]. Dr. Blaine reviewed Plaintiff's allegations and claimed medical impairments, past medical history, and conducted a physical examination. [Tr. 430]. First, Dr. Blaine opined that Plaintiff

14

could stand or walk for six or seven hours in an eight-hour day with reasonable rest breaks limited by back and joint pain. [Tr. 431]. Additionally, Dr. Blaine assessed that Plaintiff could lift and carry ten pounds frequently and thirty pounds infrequently limited by back and join pain and by carpal tunnel syndrome. [*Id.*]. Dr. Blaine found that Plaintiff could sit for eight hours with reasonable rest breaks, as well as that she appeared capable of handling her own affairs if approved for disability. [*Id.*].

Nonexamining state agency physician, Carolyn Parrish, M.D., examined the evidence of record at the initial level of the agency's review on December 8, 2016. [Tr. 71]. Dr. Parrish opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. [Tr. 69]. Dr. Parrish assessed that Plaintiff was unlimited in her ability to push and/or pull, with the exception of the listed lifting and carrying limitations. [*Id.*]. Lastly, Dr. Parrish opined that Plaintiff could frequently climb ramps and stairs and balance, but that she could only occasionally climb ladders, ropes, or scaffolds, stoop, kneel, crouch, and crawl. [Tr. 70]. Nonexamining state agency consultant, G McCormack, M.D., reviewed the evidence of record at the reconsideration level of the agency's review on March 29, 2017, and opined similar limitations. [Tr. 87].

In the disability decision, the ALJ first reviewed the opinions of Dr. Parrish and Dr. McCormack and found that they were consistent with the overall medical evidence of record. [Tr. 23]. The ALJ noted that Plaintiff has a history of osteoarthritis and cited to particular treatment records where Plaintiff "reported joint pain, swelling, and stiffness, as well as decreased joint range of motion" and that "[t]he pain is located in the neck, pack, left shoulder, left elbow, left hip, left knee, left ankle, right shoulder, right elbow, right hip, right knee, and right ankle." [*Id.*].

15

Additionally, the ALJ noted that Plaintiff described her low back pain as off towards the right side at approximately the L4 level. [*Id.*]. Lastly, the ALJ cited to November 30, 2016 x-rays of Plaintiff's spine which "indicated overall stable findings with multilevel lumbar spondylosis and scoliosis." [*Id.*]; *see* [Tr. 432].

Next, the ALJ reviewed Dr. Hamilos' opinion, including noting that his opinion was "[b]ased on his one-time examination of the claimant." [Tr. 24]. The ALJ found that Dr. Hamilos' opinion appeared to be based on Plaintiff's subjective complaints and was inconsistent with the overall medical record. [*Id.*]. The ALJ specifically noted that despite Plaintiff's "allegations that her impairments prevent her from performing basic work activities," Plaintiff "exhibited normal gait and posture during examinations throughout the record," citing to May 16, 2016, November 30, 2016, March 15, 2018, and August 15, 2018 treatment notes. [*Id.*]; *see* [Tr. 353, 431, 507, and 669]. Further, the ALJ noted that Plaintiff's "motor strength was consistently 5/5 to the bilateral upper and lower extremities." [Tr. 24]; *see* [Tr. 431, 506, 660, 664, and 669]. The ALJ also cited to a "May 2018 examination of the claimant's lumbar spine [which] showed normal range of motion and no tenderness to palpation." [Tr. 24]. Therefore, the ALJ afforded little weight to Dr. Hamilos' opinion, as it was inconsistent with the overall medical evidence of record. [*Id.*].

The ALJ also afforded little weight to Dr. Blaine's opinion, finding that it was inconsistent with Dr. Blaine's own examination findings and the medical record. [*Id.*]. The ALJ specifically noted that during the examination, Plaintiff did not use an assistive device, was able to get up from her chair and onto the examining table without difficulty, her grip strength was 5/5 bilaterally and flexor and extensor strength of both upper and lower extremities was 5/5, and her digital manipulation appeared normal in both hands. [*Id.*]. Additionally, similar to Dr. Hamilos' opinion, the ALJ detailed how the opinion was inconsistent with the medical record; as she detailed that

16

Plaintiff exhibited normal gait and posture, her motor strength was consistently 5/5 to the bilateral upper and lower extremities, and on examination, her lumbar spine showed normal range of motion and no tenderness to palpation. [*Id.*].

## 2. Standard

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[3] However, a treating physician's opinion as to the nature and severity of an impairment must be given "controlling weight" only if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c); 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how he considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v.*

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

17

*Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Ultimately, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The ALJ is not required to give "good reasons" for the weight assigned to the opinions of non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii). Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative law judges . . . are not bound by findings made by State agency . . . physicians and psychologists . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions." 1996 WL 374180, at *3 (July 2, 1996).

18

### 3. Analysis

First, contrary to Plaintiff's assertion, Dr. Hamilos was not a treating physician, and thus his opinion was not entitled to controlling weight. *See Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241, 245 (6th Cir. 2018) (noting that 20 CFR § 404.1527(c)(2) "give[s] controlling weight to a treating physician only (and only if certain criteria are met)" and the ALJ was not required to give controlling weight to the consultative examiner as "Dr. Shamberg only examined Andres one time"); *see, e.g., Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017). Therefore, as Dr. Hamilos did not have "the on-going treatment relationship necessary to apply the treating source rule," the ALJ was not required to afford controlling weight to his opinion. *Id.*

While reviewing Dr. Hamilos' opinion, the ALJ specifically detailed how it was inconsistent with the medical record with citations to treatment records from May 2016 through August 2018. The ALJ also acknowledged Dr. Hamilos' "one-time examination of the claimant," and his status as a podiatrist. [Tr. 24]. Therefore, the Court finds that the ALJ appropriately considered Dr. Hamilos' opinion and afforded it little weight, as it was inconsistent with the medical record.

Plaintiff does not present specific challenges to the ALJ's treatment of Dr. Hamilos' opinion—with the exception of the claimed treating physician status. Rather, with respect to the opinions of the nonexamining state agency physicians, Plaintiff claims it was error to accept their opinions over those of the examining (and incorrectly claimed as treating) physicians, as well as that the examining physicians did not review a complete medical record. In particular, Plaintiff claims that the opinions of the nonexamining state agency consultants "do not account for the later treatment of the Plaintiff by a neurosurgeon both for low back pain and, more importantly, for

19

carpal tunnel surgery which led to a right carpal tunnel release on May 31, 2018." [Doc. 23 at 14]; *see* [Tr. 670]. Additionally, Plaintiff points to a June 13, 2018 treatment note reflecting that she may possible need left side carpal tunnel surgery [Tr. 660], as well as a May 10, 2018 diagnosis as "suffering from low back pain with scoliosis likely related to the degenerative changes at L4-5 for which the Plaintiff was undergoing medial branch blocks and also the objective evidence of an abnormal appearing lesion with an L4 vertebral body as well as chronic headaches" [Doc. 23 at 14 (citing Tr. 664)]. Lastly, Plaintiff cites to alleged severe vision problems after these opinions.

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3).

"[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakely*, 581 F.3d at 409). "[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-

20

submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409). The Sixth Circuit has found that an ALJ satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.*

With respect to the Plaintiff's carpal tunnel syndrome, the ALJ referenced the "May 2018 examination of [Plaintiff's] lumbar spine [which] showed normal range of motion and no tenderness to palpation." [Tr. 24]. As detailed above, the ALJ extensively reviewed the medical record, including citing to numerous treatment records after Dr. Parrish's and Dr. McCormack's opinions. The ALJ's analysis of why Dr. Hamilos' opinion, as well as Dr. Blaine's opinion, were inconsistent with the medical record—including by citing to specific examples in the medical record occurring after the opinions of the nonexamining state agency consultants—demonstrates that she considered that Dr. Parrish and Dr. McCormack did not review a complete medical record with respect to Plaintiff's carpal tunnel syndrome.

However, as detailed above, the Court has already found that the ALJ failed to appropriately consider Plaintiff's vision impairments in the RFC determination. Similarly, the Court cannot find that the ALJ made an independent determination based on all the medical evidence and that her analysis spanned the entire record when the ALJ failed to consider this portion of the medical record. This error is compounded with the fact that Plaintiff's vision problems increased after the filing of her application and the opinions of the nonexamining state agency consultants. Accordingly, the ALJ failed to subject the opinions of the nonexamining state agency consultants to sufficient scrutiny when her analysis did not cover the entire record or reflect

21

that the nonexamining state agency consultants did not consider the presence of any functional limitations related to Plaintiff's vision impairments. Therefore, on remand, the ALJ is also instructed to appropriately consider the medical opinions of record, including that the nonexamining state agency consultants did not review the complete medical record.

### D. Evaluation of Plaintiff's Symptoms

Plaintiff claims that the ALJ failed to properly evaluate her symptoms pursuant to Social Security Ruling 16-3p. In particular, Plaintiff states that she "testified that she had difficulty with her vision and had double vision," and that the ALJ made "no mention or analysis of the Plaintiff's objective evidence of eye difficulties." [Doc. 23 at 15].

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is

22

responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4–8.

The Court has already found that Plaintiff's case will be remanded for a proper evaluation of her vision impairments. Therefore, on remand, the ALJ is directed to perform a subjective symptom evaluation in accordance with the above-listed standards.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 22**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 26**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to appropriately consider Plaintiff's vision impairments in the RFC determination.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge

23